NEGROES MONICA ET AL. ⎫
vs. ⎬ December Term, 1848.
WALTER MITCHELL ET AL. ⎭

[DEVISE TO MANUMITTED NEGROES—ACT OF 1831, CH. 281.]

A TESTATOR, by his will, manumitted certain negroes, and, after giving them a pecuniary legacy, devised as follows : "I will and devise that my executor shall cause to be erected on some part of my farm called Rose Hill, (the place to be selected by the above manumitted negroes,) a good, substantial dwelling house, with one brick chimney, which house, together with two acres of land adjoining thereto, I give and devise to the above manumitted negroes, and their heirs, forever." HELD—

That the testator intended by this devise, to provide the negroes in question with a habitation to live in, and, as this intent comes in conflict with the policy of the legislature, which forbids persons in their situation from remaining

in the state, unless upon terms incompatible with the unrestricted enjoyment of the devise, the latter must fail.

Slaves manumitted since the act of 1831, ch. 281, cannot remain in this state in a condition of freedom, though the Orphans Courts may, in their discretion, give them annual permits to remain, as by said act is provided.

[The principal question presented by this case, the facts of which will sufficiently appear in the opinion of the Chancellor, was, whether certain negroes, manumitted by will since the act of 1831, chap. 281, and consequently incapable of residing within the state, were entitled to a devise of certain real estate, made to them by the same will:]

THE CHANCELLOR :

Without meaning to decide that a master may not, since the act of 1831, chap. 281, manumit his slaves by will, and, at the same time make to them an effectual devise of real estate, I am yet of opinion, that the devise in the will of Ignatius Semmes, upon which the question in this case arises, must fail.

The will was executed in April, 1843, and the testator died soon afterwards. By it he gives freedom to several of his slaves, to each of whom he bequeathed a pecuniary legacy of three hundred dollars, of which several of them have received the sum of two hundred and fifty-nine dollars and fifty-four cents, that being the dividend of the personal assets applicable to the purpose, and it is not understood that the claim of the unsatisfied legatees to that extent is controverted.

But, in addition to the bequest of freedom, and the pecuniary legacy, the will contains the following clause : "I will and devise, that my executor shall cause to be erected on some part of my farm, called Rose Hill, (the place to be selected by the above manumitted negroes,) a good substantial dwelling house, with one brick chimney, which house, together with two acres of land adjoining thereto, I give and devise to the above manumitted negroes and their heirs forever."

Now, it seems to me, that the testator intended by this devise, to provide the negroes in question, with a habitation to live in, and, as this intent comes in conflict with the policy of

the legislature, which forbids persons in their situation from remaining in the state, unless upon terms incompatible with the unrestricted enjoyment of the devise, the latter must fail.

Looking to the 3d, 4th and 5th sections of the act of 1831, chap. 281, it is manifest, that no slave manumitted since its passage can remain in this state in a condition of freedom. It is true, that the orphans courts may or may not grant slaves so manumitted annual permits to remain, but the privilege of doing so depends upon the discretion of the court, and if withheld, they are liable to be expelled at any time.

The duty of the courts to give effect to devises, if it can be done, is conceded, but the law *quæ nihil frustra* will confer no privilege or right upon a party which he cannot enjoy, and for that reason, will never cast the freehold upon an alien heir who cannot keep it. 2 *Kent's Com.*, 53.

Being satisfied from the terms of this devise, that it was the intention of the testator to provide for these negroes a permanent home, and not to confer upon them a title, of which they could only get the benefit by selling, and as that intention must yield to the legal policy of the state, as declared by the legislature, I should, if no other reason existed, feel bound to declare the devise void.

But there is another reason. It appears that the personal assets are insufficient to pay debts and the pecuniary legacies ; and that, consequently, the latter receive dividends only. How then is the house to be erected ? Not, certainly, by having recourse to the real estate in the hands of the devisees, for they are equally objects of the bounty of the testator ; and there is nothing in the will to show any such intention. *Stevens* vs. *Gregg*, 10 *Gill & Johnson*, 143. The executor is charged with the duty of erecting the house, which of course was to be done out of the personal assets, and they being deficient, the duty must necessarily remain unperformed, and as the two acres of land were to adjoin the house, that portion of the devise must fail also, there being no house to adjoin.

A decree will be signed for the payment of the pecuniary

legacies, but under the circumstances of the case, the parties respectively will be required to pay their own costs.

[No appeal was taken from this decree.]